# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CONEMAUGH HEALTH          )
SYSTEM, INC.,             )
                          )
   Plaintiff/Counterclaim Defendant,   )
              v.          )          Civil No. 3:21-cv-00190
                          )          Judge Stephanie Haines
PROSELECT INSURANCE COMPANY   )
and IRONSHORE SPECIALTY   )
INSURANCE COMPANY,        )
                          )
   Defendants/Counterclaim Plaintiffs.  )

## OPINION

Conemaugh Health System, Inc. ("CHSI")[1] is a health care provider filing this civil action

against ProSelect Insurance Company ("ProSelect"), its primary insurance provider in this case,

and against Ironshore Specialty Insurance Company ("Ironshore"), the excess insurance provider.

CHSI seeks a declaration that ProSelect and/or Ironshore have a duty to defend and/or indemnify

CHSI in an underlying lawsuit filed against it by multiple plaintiffs (the "Barto Litigation").  In

Count I CHSI seeks declaratory judgment on the Duty to Indemnify and/or Defend under

ProSelect's HPL Policy and First Layer Excess Policy (Count I v. Coverys).[2]  In Count II CHSI

seeks declaratory judgment on the Duty to Indemnify and/or Defend under ProSelect's CGL Policy

and First-Layer Excess Policy (Count II v. Coverys).  In Count III CHSI seeks declaratory

---

[1] Plaintiff, Conemaugh Health System, Inc. (called "Conemaugh" in the Complaint) is a health care provider incorporated in Pennsylvania and has a principal place of business in Johnstown, Pennsylvania.  The underlying litigation, later referred to as the "Barto Litigation" names as defendants Conemaugh Valley Memorial Hospital d/b/a Memorial Medical Center and DLP Conemaugh Memorial Medical Center, LLC d/b/a Conemaugh Health System and Conemaugh Memorial Medical Center Lee Campus.  The defendants' insurance policies only list Conemaugh Health System, Inc. and Conemaugh Valley Memorial Hospital d/b/a Memorial Medical Center as named insureds.  For purposes of this Opinion the Court's reference to CHSI encompasses all Conemaugh insureds at issue in this litigation.

[2] ProSelect is a member company of Coverys, Inc. and the allegations in the Complaint at times refer interchangeably between ProSelect and Coverys.

judgment on the Duty to Indemnify and/or Defend under the Ironshore Policy (Count III v. Ironshore).

This case was initially filed in Cambria County on or around August 20, 2021. A Notice of Removal (ECF No. 1) was filed with this Court on October 21, 2021, based on diversity jurisdiction. All parties mutually consented to the removal. ProSelect and Ironshore each filed an Answer to the Complaint and Counterclaims, respectively (ECF Nos. 11, 10).

ProSelect's Counterclaims (ECF No. 11, pp. 34-43) (emphasis added):[3]

**Count I: The HPL Primary Policy's Sexual Misconduct Exclusion Bars Coverage for Conemaugh (ProSelect Insurance Company v. Conemaugh Health System, Inc.) (Declaratory Judgment)**
Count II: The HPL Primary Policy's Known Claims and Circumstances Exclusion (ProSelect Insurance Company v. Conemaugh Health System, Inc.) (Declaratory Judgment)
**Count III: The CGL Primary Policy's Abuse or Molestation Exclusion (ProSelect Insurance Company v. Conemaugh Health System, Inc.) (Declaratory Judgment)**
**Count IV: The CGL Primary Policy's Healthcare Professional Services Exclusion (ProSelect Insurance Company v. Conemaugh Health System, Inc.) (Declaratory Judgment)**
Count V: No General Liability Coverage for Bodily Injury Occurring Outside the Policy Period (ProSelect Insurance Company v. Conemaugh Health System, Inc.) (Declaratory Judgment)
Count VI: The CGL Primary Policy's Known Claims and Circumstances Provision (ProSelect Insurance Company v. Conemaugh Health System, Inc.) (Declaratory Judgment)

Ironshore's Counterclaims (ECF No. 10, pp. 36-47)(emphasis added):[4]

**Count I: The HPL Primary Policy's Sexual Misconduct Exclusion Bars Coverage (Declaratory Judgment)**
**Count II: The CGL Primary Policy's Abuse or Molestation Exclusion Bars Coverage (Declaratory Judgment)**
Count III: Exhaustion of Primary Policy (Declaratory Judgment)
**Count IV: Retroactive Date Provision (Declaratory Judgment)**

---

[3] Counterclaims in bold are those for which ProSelect seeks declaratory judgment in its Motion for Judgment on the Pleadings.
[4] Counterclaims in bold are those for which Ironshore seeks declaratory judgment in its Motion for Judgment on the Pleadings.

Count V:  The CGL Primary Policy's Healthcare Professional Servies Exclusion Bars Coverage (Declaratory Judgment)
Count VI:  No General Liability Coverage (Declaratory Judgment)
Count VII:  Known Claims and Circumstances Provision (Declaratory Judgment)
Count VIII:  Known Claims and Circumstances Provision (Declaratory Judgment)

CHSI Answered the Counterclaims (ECF Nos. 14, 15).  Later, on January 11, 2022, ProSelect and Ironshore each filed Motions for Judgment on the Pleadings (ECF Nos. 23, 25) with supporting Briefs (ECF Nos. 24, 26) seeking declaratory judgment on the claims in the Complaint and on certain of each of their Counterclaims (*see* fns 2 and 3).  CHSI filed an Omnibus Brief in Opposition (ECF No. 32).  ProSelect and Ironshore filed Reply Briefs (ECF Nos. 34, 33) and with the permission of the Court a Sur-Reply Brief was filed by CHSI (ECF No. 38) and a Sur-Sur Reply (ECF No. 40) was filed by Ironshore.

ProSelect seeks judgment in its favor on both Counts (I and II) of the CHSI Complaint and on Counts I, III, and IV of ProSelect's Counterclaims.  ProSelect also seeks a declaration that it has no duty to defend or indemnify CHSI in the Barto Litigation.  ECF No. 23, ¶¶ 1-2.  Ironshore seeks entry of judgment in its favor (with prejudice) on CHSI Complaint (Count III) and on Counts I, II, and IV of its Counterclaims.  ECF No. 25, ¶ 1.  Ironshore also seeks a declaration that it has no duty to defend or indemnify CHSI in the Barto Litigation.  ECF No. 25, ¶ 2.  These matters are ripe for disposition.

## I.  Factual Background

### A.   The Underlying Litigation ("Barto Litigation")

The operative Fourth Amended Complaint of the Barto Litigation (ECF No. 1-2, pp. 201-319 (Exhibit E)) originally filed in Cambria County Court of Common Pleas has 45 plaintiffs ("Doe Plaintiffs") suing (1) Laurel Pediatric Associates, Inc.; (2) Johnstown Pediatric Associates, Inc.; (3) Conemaugh Valley Memorial Hospital d/b/a Memorial Medical Center; (4) DLP

Conemaugh Memorial Medical center, LLC d/b/a Conemaugh Health System and Conemaugh Memorial Medical Center Lee Campus; (5) DLP Healthcare, LLC d/b/a Duke Lifepoint Healthcare; and (6) Dr. Johnnie W. Barto ("Dr. Barto"), M.D. (collectively "Barto Litigation Defendants"). ECF No. 1-2, pp. 206-214. The Barto Litigation stems from Dr. Barto's medical treatment of a multitude of pediatric patients that occurred at various times between 1991 through 2018 at various healthcare facilities. ECF No. 1-2, ¶ 43.

According to the Fourth Amended Complaint, Dr. Barto was a licensed pediatric physician between 1974 and 2018 and during those years he used his professional position to sexually abuse minor patients under the pretense and as part of medical treatment. ECF No. 1-2, ¶¶ 58, 60. In March 2018, Dr. Barto was charged with multiple counts of aggravated indecent assault, indecent assault, corruption of minors, unlawful contact with a minor, and endangering the welfare of children. ECF No. 1-2, ¶ 61. Additional charges were brought against Dr. Barto and he subsequently entered no-contest pleas to dozens of the charged offenses. ECF No. 1-2, ¶¶ 61-63. On March 18, 2019, Dr. Barto received a criminal sentence of 79 to 158 years in state prison for his crimes. ECF No. 1-2, ¶ 64. The Fourth Amended Complaint states, "At all times relevant hereto, Barto was acting in the course and scope of his employment with Defendants Laurel Pediatric, Johnstown and/or Conemaugh and/or DLP as their agent, apparent agent, servant and/or employee …" ECF No. 1-2, ¶ 65.

After Dr. Barto's criminal sentence, Doe Plaintiffs brought the claims below against the Barto Litigation Defendants (ECF No. 1-2, pp. 293-316):

    Count I:  Childhood Sexual Abuse and Vicarious Liability
    Count II:  Negligence and Hiring/Retention
    Count III:  Negligent Supervision
    Count V:  Negligent Misrepresentation
    Count VII:  Intentional Infliction of Emotional Distress
    Count IX:  Civil Conspiracy to Protect Reputation and Finances

Count X:  Medical Negligence
Count XI:  Assault (Dr. Barto only)
Count XII:  Battery (Dr. Barto only)
Count XIII:  Violations of Title IX 20 U.S.C. §1681(a), et seq.
Count XIV:  Corporate Negligence (AKA:  Negligent Credentialing)

CHSI states it timely noticed ProSelect and Ironshore of the Barto Litigation.  ECF No. 1-

2, ¶¶ 51, 53.  But neither entity acknowledged coverage.  *Id.* ¶¶ 52, 54.  *See also* ECF Nos. 11-2 -

11-4; ECF No. 11-5 (ProSelect's denial of coverage); ECF N0. 10-8, pp. 2-10 (Ironshore's denial

of coverage).  In general, the insurance companies determined that the insurance policies excluded

coverage for the type of claims that were at issue in the Barto Litigation and so they did not have

a duty to defend or indemnify CHSI in the case.

**B.**     **ProSelect Policies**

CHSI bought a Health Care Facility Professional Liability Policy (No. 2-25167HPL) for a

policy period from January 1, 2014, to January 1, 2015, with a limit of $500,000 per claim and

$2.5 million in the annual aggregate from the Coverys ("HPL Policy").  ECF No. 1-2, ¶ 12 (Exhibit

A).  According to the HPL Policy:[5]

> WE [Coverys] will pay on YOUR behalf those sums which YOU become legally
> obligated to pay as DAMAGES, up to the applicable Limits of Liability stated in
> the DECLARATIONS, because of a CLAIM for an INCIDENT in the performance
> of PROFESSIONAL SERVICES by YOU or someone for whom YOU are legally
> responsible.

ECF No. 1-2, ¶ 15; ECF No. 1-2, p. 43 (PL 071 10/12, § I (1).  This provision covers Conemaugh

Valley Memorial Hospital d/b/a Memorial Medical Center, with a "Retroactive Date" to November

16, 1978.  ECF No. 1-2, ¶ 14; ECF No. 1-2, p. 24 (DEC 106 10/12. p. 1); ECF No. 1-2, p. 40 (DEC

106A 10/12, p. 1).  INCIDENT means any negligent act, error, or omission including repeated

---

[5] Capitalized terms are defined within the insurance policies.

exposure to the same or related negligent act, or omission. ECF No. 1-2, ¶ 18 and

PROFESSIONAL SERVICES means, *inter alia*, medical treatment. ECF NO. 1-2, ¶ 19.

CHSI also bought a Commercial General Liability Policy (No. 2-25167GL) from Coverys

with a policy period of January 1, 2014, to January 1, 2015, and limits of $1 million per occurrence

and $3 million in the annual aggregate ("CGL Policy"). ECF No. 1-2, ¶ 25 (Exhibit B).

Conemaugh Valley Memorial Hospital d/b/a/ Memorial Medical Center is a named insured under

the policy. ECF No. 1-2, ¶ 26; ECF No. 1-2, p. 117 (DEC 101A 10/12 p. 1). The applicable

provision follows:

> WE [Coverys] will pay those sums that the insured becomes legally obligated to
> pay as damages because of "bodily injury" or "property damage" to which this
> insurance applies. We will have the right and duty to defend the insured against
> any "suit" seeking those damages.

ECF No. 1-2, ¶ 27; ECF No. 1-2, p.69 (CG 00 01 r2, p. 1). The CGL coverage applies only if the

"bodily injury" takes place in a "coverage territory" during the policy period, and that the "bodily

injury" was not known to an "employee" before the policy period. ECF No. 1-2, ¶ 28.

The third ProSelect Policy at issue is the First Layer Excess Policy bought by CHSI as an

Excess Medical Professional and Umbrella Policy (No. 2-25167CA) with a policy period from

January 1, 2014, to January 1, 2015, and with limits of $10 million per claim and in the aggregate.

ECF No. 1-2, ¶ 33 (Exhibit C). This policy provides excess coverage for the HPL and CGL

policies and abides by the same terms and conditions for coverage as the parent policies. ECF No.

1-2, ¶¶ 34, 35.

> In return for the payment of premium, and subject to all of the terms of this POLICY
> and to the exclusions stated in SECTION V – EXCLUSIONS, WE will pay on
> behalf of the INSURED all those sums in excess of the RETAINED LIMIT, up to
> the applicable LIMIT of Liability stated in the DECLARATIONS, that the
> INSURED becomes legally obligated to pay as DAMAGES because of a CLAIM
> for an INCIDENT in the performance of PROFESSIONAL SERVICES by the
> INSURED or someone for whom the insured is legally responsible.

ECF No. 1-2, p. 139 (EU 003 10/12), p. 1 of 31). "Section V – Exclusions" states, "This POLICY shall incorporate all exclusions applicable to the UNDERLYING INSURANCE..." ECF No. 1-2, p. 148.

### C.    Ironshore Policy

CHSI also bought an Excess Follow Form Policy (No. 001883500) from Ironshore with a Policy Period of January 1, 2014, to September 1, 2014, with limits of $30 million per claim and in the aggregate, in excess of the ProSelect policies. ECF No. 1-2, ¶ 36 (Exhibit D). The appliable provision follows:

> The Underwriter [Ironshore] agrees to provide the Insured [Conemaugh] with insurance excess of the Underlaying Insurance , and in conformance with the terms, conditions, limitations, exclusions, definitions and endorsements of the Primary Policy, except as otherwise stated in this Policy.

ECF No. 1-2, ¶ 37; ECF No. 1-2, p. 177 (IHFFXS.001 (04/08 Ed.), § II). Coverage of the Ironshore Policy "for loss, damages, settlements and defense expenses" is triggered upon exhaustion of the limits of liability by the ProSelect policies. ECF No. 1-2, ¶ 39; ECF No. 1-2, p. 177 (IHFFXS.001 (04/08 Ed.), § 2). ). This policy has a retroactive date provision that indicates that coverage is not extended to any acts before January 1, 2007.

## II.  Standard of Review

A party may move for judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when "the movant clearly establishes that no material issue of fact remains ... and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). When deciding a motion for judgment on the pleadings, the Court considers the pleadings and exhibits attached thereto, matters of public record and "undisputedly authentic documents attached

to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010). A motion for judgment on the pleadings is analyzed under the same standards that apply to a Rule 12(b)(6) motion. *See Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017). Accordingly, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)).

The motion will be granted if the plaintiff has not articulated enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (internal quotations omitted). It is not enough for a plaintiff to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 663-64).

## III.   Discussion

As stated above, CHSI brings this case seeking the Court's declaration that it is the responsibility of CHSI's insurers, ProSelect and Ironshore, to defend and/or indemnify it in the Barto Litigation. CHSI asserts that the Barto Litigation is covered by ProSelect policies, and if

need be, by the Ironshore policy.  CHSI argues it is covered because the claims that arise from the

damaging conduct are covered by the policies' language, the claims arose after the November 16,

1978, retroactive date, and CHSI timely reported the Barto Litigation to ProSelect and Ironshore.

ProSelect and Ironshore state they are not responsible to defend or indemnify CHSI in the Barto

Litigation based on several defenses.  Most prominently at issue is whether the specific exclusions

(Counterclaims) identified in the insurance policies exempt the policies from coverage of the

expenses in the Barto Litigation.

If the Court finds any one of the policy exclusions applies, it necessarily follows that it

would enter declaratory judgment for the exempted insurance company as to Counts I and II of the

Complaint, thereby declaring that the insurance company is not responsible to defend or indemnify

CHSI.  The Court will review each of the exclusion provisions of each policy to make its

determination on the Judgment on the Pleadings.  "The interpretation of an insurance policy is a

question of law..."  *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*,

908 A.2d 888, 897 (2006) (citing *401 Fourth Street v. Investors Ins. Co.*, 879 A.2d 166, 170

(2005)).  "Courts may therefore dispose of such cases on motions for judgment on the pleadings

where the sole issue is the interpretation of the policy."  *Leithbridge Co. v. Greenwich Ins. Co.*,

464 F. Supp. 3d 734, 738 (E.D. Pa. 2020)

The Court, pursuant to Pennsylvania Law will examine the applicable provisions of the

insurance policy to determine coverage.  Of specific importance are the claims alleged against

CHSI in the Barto Litigation.  "In determining whether the underlying litigation falls within the

scope of the insurer's duties to defend or indemnify, a court must examine only those factual

allegations made within the "four corners" of the underlying complaint."  *Id.* at 739.  The duties

cannot be triggered by allegations outside the complaint. *See Kvaerner*, 908 A.2d at 896 ("[A]n

insurer's duty to defend and indemnify [must] be determined solely from the language of the complaint against the insured.... [A]n insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself."). There are a total of nine counts in the Fourth Amended Complaint where CHSI is named as a defendant (ECF No. 1-2, pp. 293-316). These claims against CHSI stem from the illegal conduct of Dr. Barto. In general, CHSI states that the claims against it are separate and apart from the criminal misconduct of Dr. Barto and thus the exclusions do not apply and it is covered by ProSelect and Ironshore's insurance policies. Contrary, it is ProSelect's and Ironshore's position that but for the excluded criminal misconduct there would be no claims against CHSI. Thus, CHSI's claims for coverage are excluded.

Both parties agree that under Pennsylvania law the interpretation of an insurance policy is a matter of law which the Court may decide. *See Gardner v. State Farm Fire and Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008) (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 938 A.2d 286, 290 (2007)). The goal is to ascertain the intent of the parties as manifested by the policy terms. *See Netherlands Ins. Co. v. Butler Area Sch. Dist.*, 256 F. Supp. 3d 600, 611 (W.D. Pa. 2017) ("A policy must be read as a whole and its meaning construed according to its plain language.") (quoting *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 163 (3d Cir. 2011)). If the terms are clear and unambiguous, courts are required to give effect to those terms. *See Netherlands*, 256, F. Supp at 611. But if the terms are ambiguous, they must be construed in favor of the insured and against the insurer. *See id.* Terms in an insurance policy are ambiguous if they are reasonably susceptible to different constructions, obscure in meaning through indefiniteness of expression, or have a double meaning. *See id.*

Once the language of the policy has been interpreted, the Court must consult the four corners of the Barto Litigation Complaint to determine whether its factual allegations trigger

coverage under the policy.  *See Hanover Ins. Co. v. Urban Outfitters, Inc.,* 806 F.3d 761, 765 (3d

Cir. 2015).  To interpret the terms of insurance policies for a duty to defend or indemnify, the duty

to defend is broader than the duty to indemnify.  *See USAA Cas. Ins. Co. v. Bateman*, Civ. A. No.

07-3700, 2008 WL 4761718, at *4 (E.D. Pa. Oct. 30, 2008).  When an underlying complaint makes

at least one allegation that falls within the scope of the policy's coverage, the duty to defend is

triggered, even where an insured is ultimately found to be not liable.  *See Gen. Accident Ins. Co.*

*of Am. v. Allen*, 692 A.2d 1089, 1095 (1997) ("If the complaint against the insured avers facts that

would support a recovery covered by the policy, then coverage is triggered and the insurer has a

duty to defend until such time that the claim is confined to a recovery that the policy does not

cover.").

### A. Duty to Indemnify and/or Defend under HPL Policy and First Layer Excess Policy

CHSI's Complaint seeks enforcement of coverage under its ProSelect HPL insurance

policy and First Layer Excess policy.  Coverage includes a duty to defend and indemnify it in

litigation.  ProSelect's Motion for Judgment on the Pleadings seeks judgment in its favor excluding

a duty to indemnify and/or defend CHSI in the Barto Litigation.  ProSelect states that because the

Barto Litigation involves allegations of sexual abuse, molestation, and other sexual misconduct,

the ProSelect Policies' exclusions for coverage for suits containing such allegations exempt the

Policies from defending or indemnifying CHSI in the Barto Litigation.  CHSI counters that the

exclusions are ambiguous and should be interpreted in favor of coverage for CHSI.

As stated above, the HPL Policy covers "DAMAGES … because of a CLAIM for an

INCIDENT in the performance of PROFESSIONAL SERVICES by YOU or someone for whom

YOU are legally responsible."  The HPL Policy states ProSelect has a duty to defend "any SUIT

brought against [Conemaugh] seeking DAMAGES that are covered by this POLICY."  ECF No.

11

32, p. 8.  The HPL Policy also covers a duty to defend any SUIT brought against CHSI.  *Id.*  The

ProSelect First Layer Excess policy provides excess coverage for the HPL policy and abides by

the same terms and conditions for coverage.  ECF No. 1-2, ¶¶ 34, 35.  The First Layer Excess

Policy will pay on behalf of the insured damages because of a claim for an incident in the

performance of professional services by the insured in excess of the HPL (or CGL) policies up to

its applicable limit.  The exclusions contained in the HPL policy extend to the coverage of the First

Layer Excess Policy as well.

### 1.  Sexual Misconduct Exclusion in HPL Policy

The HPL Policy contains the following Sexual Misconduct Exclusion:

> This POLICY does not apply to any liability of an INSURED or to any
> DAMAGES, INCIDENTS CLAIMS, SUITS or LICENSING BOARD
> PROCEEDINGS … [w]hich, in whole or in part, **arise out of** or contain any
> allegations of any of the following by **any person**;
> (a) Sexual intimacy, abuse, molestation, harassment, exploitation, assault, violation
> of professional boundaries or undue familiarity, or any conduct, gestures or written
> or oral statements of a sexual nature; … or
> […]
> (e) The negligent or improper employment, retention, investigation, supervision,
> training or reporting, or failure to make report, of **any person** whose conduct would
> be excluded by paragraphs (a) through (d) above.

ECF No. 32, p. 8; ECF No. 1-2, p. 49 (HPL Policy PL 071 10/12 page 12 of 19, § VI(18))

(emphasis added).  ProSelect asserts that the language of the HPL Policy Sexual Misconduct

Exclusion is clear and unambiguous in that it bars coverage for any suit which "in whole or in part,

arise[s] out of or contain[s]" any allegations of sexual abuse, molestation, exploitation, or other

"conduct… of a sexual nature" by "any person."

On the other hand, CHSI says the Exclusion is ambiguous and must be construed in favor

of the insured.  In particular CHSI objects to the terms "any person" and "arising out of" in the

Exclusion language.  CHSI states that several claims in the Barto Litigation may be interpreted as independent of sexual misconduct.  ECF No. 24, pp. 14-15.

### a.  "Any Person"

CHSI claims that a reasonable person could interpret the term "any person" as any *insured* person.  It is unclear about whether section (a) applies to sexual misconduct of literally "any person" or just those insured under the HPL Policy, and whether (e) applies to negligent claims involving sexual misconduct of literally "any person" or just those insured under the HPL Policy. ECF No. 32, p. 15-16.  If the term "any person" only refers to insured persons, Dr. Barto would not be an individual within the purview of the exclusion.  ProSelect says it is unquestionable that "any person" should be read plainly and it is unreasonable for anyone, especially CHSI, to extend its meaning to "any *insured* person."  The Court agrees with ProSelect.

Looking at the four corners of the document, the Court recognizes that the drafters took great care in differentiating between insured and uninsured parties.  The HPL Policy explicitly states that "Insureds under the Policy" are employees, students, and volunteers but that coverage does not apply to any "intern, extern, resident, fellow, dental, osteopathic or medical doctor."  ECF No. 1-2, p. 45 (PL 071 10/12, page 3 of 19, § II(4)).  As CHSI points out, Dr. Barto was not insured under the HPL Policy; medical doctors were excepted from coverage.  ECF No. 32, p. 17.  Given that the parties were careful to identify insured persons, it is hard to fathom that CHSI would reasonably expect "all persons" would mean "all insured persons" or that the drafters would use such broad language when the language was very specific in naming and excluding certain persons from the insured group.

CHSI would like us to believe that sections (a) and (e) of the Sexual Misconduct Exclusion would not bar coverage of litigation arising from Dr. Barto's sexual abuse because he would not

be part of the group "any person" interpreted as insured persons; he is not an insured person, or at a minimum it is ambiguous whether that group means insured or not. ECF No. 32, p. 17. The Court views the insurance contract pragmatically to try to determine the intent of the parties. The plain meaning of "any person" is any person not any insured person. "There are several well-recognized principles under Pennsylvania law that courts should utilize in interpreting the legal meaning of terms in an insurance policy. Those words in the policy that are of common usage should be "construed according to their natural, plain, and ordinary sense." *Leithbridge Co. v. Greenwich Ins. Co.*, 464 F. Supp. 3d 734, 738 (E.D. Pa. 2020) (citing *Kvaerner*, 908 A.2d at 897). The Court also presumes the drafters didn't anticipate or want *any* person in a healthcare setting committing illegal sexual acts to be covered by the policy; the term "any person" would likely have been intended for any individual with an opportunity to sexually abuse a patient, not just those individuals who were insured by the plan.

Finally, a review of insurance policy caselaw demonstrates that it is typical practice to draft insurance policies with specific use of "insured" or "insured person" when one intends to describe such a group. *See e.g.*, *Britamco Underwriters, Inc. v. O'Hagan*, No. CIV. 94-1160, 1994 WL 477551, at *4 (E.D. Pa. Sept. 2, 1994), *aff'd*, 60 F.3d 814 (3d Cir. 1995)

> Actions and proceedings to recover damages for bodily injuries or property damage arising from the following are excluded from coverage, and the Company is under no duty to defend or to indemnify **an insured** in any action or proceeding alleging such damages:
> [...]
> A.
> Whether the acts are alleged to be by or at the instruction or at the direction of **the insured**, his officers, employees, agents, or servants; **or by any other person** lawfully or otherwise on, at or near premises owned or occupied by the **insured; or by any other person**;
> B. The alleged failure of **the insured**, or his officers, employees, agents or servants in the hiring, supervision, retention or control of **any person**, whether or not an officer, employee, agent or servant **of the insured**;

14

C. The alleged failure **of the insured** or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct. (emphasis added)

*See also, Allstate Ins. Co. v. Wismann*, No. CIV.A.05-6672, 2006 WL 3004876, at *1 (E.D. Pa. Oct. 20, 2006) ("The exclusion provision states, 'We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, *any* insured person. The Homeowners Policy defines 'insured person(s)' as 'you and, if a resident of your household: (a) any relative; and (b) any dependent person in your care.'"); *N. Wales Water Auth. v. Aetna Life & Cas.*, No. CIV. A. 96-0727, 1996 WL 627587, at *8 (E.D. Pa. Oct. 30, 1996), *aff'd*, 133 F.3d 910 (3d Cir. 1997) ([T]his Court concludes that the severability provision does not change the meaning of "insured," ... The preamble of the CGL policy provides: Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.* * *The word "insured" means any person or organization qualifying as such under WHO IS INSURED (SECTION II)"). The Court finds that the parties intended the plain meaning of "any person" and so the exclusion applies to Dr. Barto as an uninsured individual and applies as a whole to the Barto Litigation.

### b. "Arising out of"

CHSI also contests the meaning of "arising out of" in the Sexual Misconduct Exclusion. The Third Circuit has consistently found "where a policy contains 'arising out of' language, a court considers whether there is a causal connection between the property and underlying incident, ...'construed strictly against the insurer, arising out of' means causally connected with, not proximately caused by.'" *Tuscarora Wayne Mut. Ins. Co. v. Kadlubosky*, 889 A.2d 557, 563 (2005) (citing *Roman Mosaic & Tile v. Aetna Cas. and Sur.*, 704 A.2d 665, 669 (Pa.Super. 1997). "The phrase 'arising out of' has been equated with 'but for' causation." *Tuscarora*, 889 A.2d at

563; *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 155 (3d Cir. 2017); *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (1967); *F. Ins. Co. v. Allied Sec., Inc.*, 866 F.2d 80, 82 (3d Cir. 1989). "But for causation, i.e., a cause and result relationship, is enough to satisfy [a] provision of the policy." *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571, 573 (1961).

The ProSelect exclusion language reads, "The HPL Policy does not apply to any liability of [CHSI] or to any claims or suits [Barto Litigation] … [w]hich, in whole or in part, **arise out of** or contain any allegations of any of the following by any person; (a) Sexual intimacy, abuse, molestation, harassment, exploitation, assault, violation of professional boundaries or undue familiarity, or any conduct, gestures or written or oral statements of a sexual nature;…" ECF No. 32, p. 8; ECF No. 1-2, p. 49 (HPL Policy PL 071 10/12 page 12 of 19, § VI(18)). ProSelect states that it is unambiguous and should be interpreted to include any act causally related to the acts enumerated under (a). ProSelect says the term "arise out of" is broadly construed and the claims against CHSI must arise out of Dr. Barto's sexual misconduct. The term "arise out of" is not defined in the insurance policy itself but it has been analyzed in analogous cases.

CHSI argues that the substance of allegations against it in the Barto Litigation are about its own negligence, separate from the sexual misconduct of Dr. Barto. ECF No. 32, pp. 19-20. CHSI states that the Barto Litigation identifies claims against it such as negligent medical treatment, negligent representations about Dr. Barto, and failures to have policies in place to protect its patients. ECF No. 32, p. 19-20. It says that the CHSI negligent actions did not arise out of the sexual misconduct. In other words, CHSI could be found liable for alleged negligence whether or not Dr. Barto was sexually abusing victims. Thus, the Sexual Misconduct Exclusion does not apply.

CHSI puts forth as support for its position *Nat'l Liab. & Fire Ins. Co. v. Brimar Transit, Inc.,* 433 F. Supp. 3d 747 (W.D. Pa. 2020). In this case, the underlaying claim concerned a sexual assault on a school bus and the plaintiffs filed suit against Brimar for failure to safely transport, supervise, and implement a seating plan to keep the assault victim safe. The exclusionary clause in National's insurance policy stated:

> This insurance does not apply to bodily injury or property damage[6] arising out of:
> (a) the alleged, actual or threatened abuse, molestation or sexual contact, whether or not intentional, by anyone or any person; or
> (b) the negligent:
> > (i) employment;
> > (ii) investigation;
> > (iii) supervision; or
> > (iv) retention,
> > of anyone or negligent entrustment to anyone whose conduct would be excluded by (a) above; or
> (c) the reporting to authorities or failure to report to authorities the alleged actual, or threatened abuse, molestation or sexual contact by anyone or any person.

*Id.* at 767. National sought judgment on the pleadings, among other things, stating Brimar's claims are excluded under the policy. The Court denied National's Motion for Judgment on the Pleadings stating it failed to meet its burden to demonstrate that the exclusion bars all potential claims asserted against its insured in the underlying action. The Court found that the exclusionary clause did not bar coverage for abuse because

> viewed in the light most favorable to the insured the factual allegations against Brimar and the District are very broad, sound in negligence and assert various breaches of duties to the plaintiffs. The male student's sexual misconduct grew from the failures of Brimar and the District to tend to the needs of the passengers on the bus, including the victim. If the seating plan had been enforced, as they had agreed, the alleged actions could not have occurred. Hence, the claim for 'bodily injury' asserted against Brimar and the District arise out of their own negligence and not only from the male's sexual assault.

---

[6] The Court notes that the ProSelect exclusionary language is broader and includes "***claims and suits*** that arise in whole or in part out of sexual misconduct." ECF No. 32, p. 8; ECF No. 1-2, p. 49 (HPL Policy PL 071 10/12 page 12 of 19, § VI(18)) (emphasis added).

*Id.* at 768.[7]  In other words, the Court in *Brimar* did not find that but for the sexual assault, the litigation would not have occurred.  Instead, the Court found that plaintiffs could have sued Brimar for its negligent actions absent the boy's behavior.

The Court distinguishes the holding in *Brimar* finding in this case there is a causal, "but for" relationship, between the factual allegations of Dr. Barto in the Barto Litigation and the claims against CHSI.  *See Mut. Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745 (1999) ("[T]he particular cause of action that a complaint pleads is not determinative of whether coverage has been triggered. Instead, it is necessary to look at the factual allegations contained in the complaint."); *Kvaerner*, 908 A.2d at 896 ("[A]n insurer's duty to defend and indemnify [must] be determined solely from the language of the complaint against the insured.... [A]n insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself.").

There is a causal connection between the allegations against CHSI and the sexual misconduct of Dr. Barto.  But for the sexual abuse and other deviant behaviors for which Dr. Barto was convicted, CHSI would not have been sued for its negligent acts and intentional torts.  In other words, the Barto Litigation is based on and arises out of Dr. Barto's sexual misconduct.  An instructive Pennsylvania Supreme Court case is *Madison Constr. Company v. Harleysville Mutual Insurance Co.*, 735 A.2d 100 (1999).  In the underlying action in *Madison*, the insured's employee alleged that after inhaling hazardous fumes on the insured's construction site, he passed out and fell into a pit, hurting himself badly in the process.  *See id.* at 102.  The employee sued for negligence, and  the insurer disclaimed coverage, citing a policy exclusion for bodily injury

---

[7] *Brimar* relied on an analogous case which also involved the District, *Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 709 A.2d 910, 916 (Pa. Super. Ct. 1998).  *Brimar* is pending appeal.

"arising out of" the release of pollutants. *See id.* at 102-03. The insured argued that the "underlying lawsuit state[d] claims for acts of alleged negligence, such as failure to warn, which do not arise out of" the release of the pollutant. *See id.* at 105-06. The Pennsylvania Supreme Court disagreed concluding that "regardless of the language chosen by the [underlying] plaintiff, the plaintiff's "injuries 'arose out of' the release of the irritating fumes at the construction site." *Id.* at 110. Here, CHSI is arguing, just like the insured in *Madison*, that the underlying action arises out of its "negligence." But, just like the pollutant release was unavoidably a basis of the underlying plaintiff's personal injury claim in *Madison*, Dr, Barto's criminal misconduct is unavoidably a basis of the Underlying Doe Plaintiffs' claims here.

*Leithbridge* provides a clear analysis of this point using the basic elements of negligence: "To demonstrate negligence, a plaintiff must establish [1] that the defendant owed a duty of care to the plaintiff, [2] that duty was breached, [3] the breach resulted in the plaintiff's injury, and [4] the plaintiff suffered an actual loss or damages." 464 F. Supp. 3d 734, 740 (E.D. Pa. 2020) (citing *Kinney-Lindstrom v. Med. Care Availability & Reduction of Error Fund*, 73 A.3d 543, 563 (2013); *Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (2009)). In the Underlying Claim, the sexual misconduct is the fourth element of negligence, actual loss or damage. Without the sexual misconduct, there is no loss or damage. With no loss or damage, the Underlying Doe Plaintiffs have no negligence claim. Underlying Doe Plaintiffs' negligence claim, therefore, is unavoidably "based on" the sexual misconduct.

In assessing whether an underlying negligence claim "arises from" a particular event for insurance purposes, the law in Pennsylvania is that the event may be independent of the alleged breach of duty. *See Madison*, 735 A.2d at 109–10; *Leithbridge*, 464 F. Supp. 3d at 740. The allegations of negligent hiring, negligent misrepresentation, negligent supervision, medical

negligence could have not existed without first Dr. Barto's illegal actions. The claims against CHSI arise from the sexual misconduct of Dr. Barto. The Court finds the ProSelect HPL policy language unambiguous and declares the Sexual Misconduct Exclusion applies and ProSelect does not have a duty of coverage to CHSI.

### First Layer Excess Policy

As stated above, the First Layer Excess policy follows the same language and exclusions as the HPL policy. Therefore, all determinations of the issues above follow for the First Layer Excess Policy. Thus, the Court finds that because of the nature of the claims in the Barto Litigation, ProSelect may decline coverage under its HPL policy and the First Layer Excess Policy for defending or indemnifying CHSI in the Barto Litigation.

### Ironshore Excess Policy

In its Motion for Judgment on the Pleadings, Ironshore seeks declaratory judgment for its counterclaim that the HPL Primary Policy's Sexual Misconduct Exclusion Bars Coverage and seeks judgment in its favor regarding its duty to indemnify and/or defend CHSI under its Policy. As stated above, Ironshore's coverage is premised upon the coverage of ProSelect which the Court has determined inapplicable because of the Sexual Misconduct Exclusion. "The Ironshore Policy follows form and provides coverage "in conformance with the terms, conditions, limitations, exclusions, definitions and endorsements of the Primary Policy [HPL, CGL]..." ECF No. 10-8, pp. 3-4 (Ironshore Policy § 1). As a result, the Court declares judgment for Ironshore and coverage for the Barto Litigation is excluded from the HPL Policy, the First Layer Excess Policy, as well as from Ironshore's Policy.

### B. Duty to Indemnify and/or Defend under CGL Policy and First Layer Excess Policy

ProSelect's Motion for Judgment on the Pleadings seeks judgment in its favor regarding its duty to indemnify and/or defend CHSI under its CGL Policy. ProSelect states that the CGL Policy's Abuse or Molestation Exclusion bars coverage for "bodily injury" arising out of CHSI's rendering or failure to render professional healthcare services.

### 1. Abuse or Molestation Exclusion in CGL Policy

The CGL Exclusion states:

This insurance does not apply to damages or to "bodily injury," "property damage" or "personal and advertising injury" **arising out of**:

1. The actual or threatened abuse or molestation by anyone of any person or
2. The negligent or improper
   a. Employment;
   b. Retention;
   c. Investigation;
   d. Supervision;
   e. Training; or
   f. Reporting or failure to report of any person whose conduct would be excluded by paragraph 1. above.

ECF No. 24, p. 15; ECF No. 32, p. 9; ECF No. 1-2, p. 104 (GL 023 10/12, page 1 of 1) (emphasis added). Much like the arguments above, ProSelect states that this exclusion is clear and unambiguous and the term "arising out of" should be construed broadly as casually connected to and that but for the sexual misbehavior the claims would not exist. The Court reaches the same conclusion as it did prior, that the language is clear, and the claims against CHSI would not exist but for Dr. Barto's illegal behavior. The Abuse and Molestation Exclusion in the CGL Policy applies as it relates to the Barto Litigation.

### 2. Professional Services Exclusion in CGL Policy

Having decided the ProSelect CGL Policy is excluded from coverage for the Barto Litigation, it is not necessary to review another exclusion of the CGL Policy. Nevertheless, the

Court evaluates the Professional Services exclusion as additional support for its determination. ProSelect asserts that the Healthcare Professional Services Exclusion of the CGL Policy bars coverage for bodily injury and certain other forms of injury "arising out of rendering or failure to render any professional services," including medical treatment, "[a]ny health, diagnostic or therapeutic service, treatment, advice or instruction," or "[s]ervice by an insured as a member of a formal . . credentialing committee of a hospital . . . or executing the directives of any such . . . committee." ECF No. 24, p. 19; ECF No. 1-2, p. 100 (GL024 10/12 page 1 of 1). ProSelect states that this exclusion captures CHSI's own assertions that the Barto Litigation as it relates to CHSI is about CHSI's alleged negligence and not about sexual misconduct.

CHSI counters that not all claims against it in the Barto Litigation relate to medical treatment or professional healthcare services. Other claims against CHSI include failure to report suspicions of abuse; failure to warn parents of danger; failure to investigate; failure to institute protective policies... ECF No. 32, p. 29. The Court turns again to its evaluation of the language "arising out of" where in this particular exclusion for injury arising out of or casually connected to failure to render service by an insured [CHSI] bars recovery. Read broadly, as it has been established is proper, this exclusion may be interpreted to cover the failures of CHSI staff that were caused by Dr. Barto's illegal actions. The Court finds coverage of the CGL policy is excluded under the Professional Services Exclusion.

### *First Layer Excess Policy*

As stated above, the First Layer Excess policy follows the same language and exclusions as the CGL policy. Therefore, all determinations of the issues above follow for the First Layer Excess Policy. Thus, the Court finds that because of the nature of the claims in the Barto

Litigation, ProSelect may decline coverage under its CGL policy and the First Layer Excess Policy for defending or indemnifying CHSI in the Barto Litigation.

### *Ironshore Excess Policy*

In its Motion for Judgment on the Pleadings, Ironshore seeks declaratory judgment for its counterclaim that the CGL Primary Policy's Abuse or Molestation Exclusion Bars Coverage. As stated above, Ironshore's coverage assumes the coverage of ProSelect CGL policy which the Court has determined inapplicable because of the Abuse or Molestation Exclusion. So the Court declares judgment for Ironshore and coverage for the Barto Litigation is excluded from the CGL Policy, the First Layer Excess Policy, as well as from Ironshore's Policy.

### C. Retroactive Date Provision for Ironshore

Endorsement Number 1 to the Ironshore Policy provides:

> [i]n consideration of the premium charged, no coverage will be available for any claim, suit, demand or proceeding based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any actual or alleged act, error, omission or occurrence happening before 1/1/2007.

ECF No. 26, p. 24, ECF No. 26-1, p. 9 (IHFFXS.007 (04/08 Ed.) p. 1 of 1). Ironshore states that this retroactive date provision is unambiguous and indicates that coverage is not extended to any acts that occurred before January 1, 2007. The United States Court of Appeals for the Third Circuit has instructed that "Pennsylvania law dictates that we read the policy language regarding the retroactive date as a whole in the context of the entire amendment and we must attempt to give effect to all of its provisions." *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 322 (3d Cir. 2011). According to the Fourth Amended Complaint in the Barto Litigation, Dr. Barto began abusing his patients as early as 1974. ECF No. 26-6, ¶58 (Exhibit F, Fourth Amended Complaint). The Complaint also includes allegations with specified dates of Doe Plaintiffs before January 2007. ECF No. 26, p. 25 (citing to Fourth Amended Complaint, (Exhibit F)). In addition, Dr. Barto's

medical license was suspended in March 2000, pursuant to a decision of the Commonwealth of Pennsylvania's Bureau of Professional and Occupational Affairs following a full investigation and hearing.[8]  ECF No. 26-5, ¶ 20.  The allegations of abuse that occurred before the retroactive date of January 1, 2007, are undisputed.

CHSI claims that Ironshore's retroactive date endorsement does not apply to this matter, because there are bullet points under the provision which identify three specific named insureds (not defendants in the Barto Litigation) to which the endorsement applies, thereby only changing their retroactive date to January 1, 2007.  ECF No. 32, p. 30.

> [i]n consideration of the premium charged, no coverage will be available for any claim, suit, demand or proceeding based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any actual or alleged act, error, omission or occurrence happening before 1/1/2007.
>
> - 9/28/07 – Greater Johnstown Tech Park, LLC
> - 1/1/08 – Meyersdale Community Hospital d/b/a Meyersdale Medical Center & Miners Hospital d/b/a Miners Medical Center
> - 5/1/08 – MedCare Equipment Co., LLC (inactive as of 4/1/13)

Ironshore states that CHSI reads the provision improperly in that those three bullet points only apply to the retroactive dates of each of those entities.  The January 1, 2007, date applies to all others covered by the policy.  CHSI says, at best, the terms are ambiguous.  The Court agrees the terms of this endorsement are ambiguous, and therefore on this matter it finds for the insured CHSI. But this finding does not affect the eventual outcome of the Court's decision, given other exclusions in the ProSelect insurance policies apply.

---

[8]  As a related matter, ProSelect and Ironshore assert that CHSI was put on notice of the various allegations of sexual misconduct against Dr. Barto by the time that his license was revoked.  Therefore, ProSelect and Ironshore claim that CHSI knew or should have known claims were likely at the time they entered into the insurance agreements with CHSI and that CHSI didn't disclose this information.  The HPL policy excludes from coverage situations known and not divulged to the insurance company before executing the contract. (ECF No. 11, p. 27 (Seventh Affirmative Defense); ECF No. 10, p. 29 (Tenth Affirmative Defense)).

### D. Material Issues of Fact[9]

CHSI claims that material issues of fact preclude judgment on the pleadings. CHSI states that issues exist whether all claims arise from Dr. Barto's abuse; whether Dr. Barto is a Conemaugh employee; and whether the incidents occurred at a Conemaugh facility. These issues of fact do not impact the Court's conclusions of law. ECF No. 32, pp. 24-25. The interpretation of the insurance policies is a question of law and courts routinely grant Rule 12(c) motions based on policy exclusions even if there are conflicting readings of the underlying complaint. No factual issue raised by CHSI has any bearing on whether the exclusions in the insurance policies apply barring coverage. The Court finds this argument unpersuasive.

## IV.   Conclusion

For the reasons stated above, Defendants Motion for Judgment on the Pleadings will be GRANTED. The Court enters Declaratory Judgment for ProSelect and Ironshore that they have no obligation to Defend or Indemnify CHSI in the Barto Litigation.

An appropriate Order will be entered.

Dated: July 14, 2023

Stephanie L. Haines
United States District Court Judge

---

[9] The Court notes that (1) Dr. Barto was not an employee or agent of CHSI; (2) none of the Doe Plaintiffs allege any conduct having occurred at a CHSI Facility; and (3) the Doe Plaintiffs do not plead facts that CHSI knew or should have known about Dr. Barto's conduct. ECF No. 1-2, ¶ 65.